UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSICA BELLEMORE,

    Plaintiff,
v.

SSS EDUCATION INC., d/b/a
JERSEY COLLEGE

    Defendant.
_____

**COMPLAINT**
**Demand for Jury Trial**

Plaintiff JESSICA BELLEMORE, by and through her undersigned counsel respectfully files this Complaint and Motion for Temporary Restraining Order and/or Motion for Preliminary Injunction against SSS EDUCATION INC., d/b/a JERSEY COLLEGE, and hereby asserts as follows:

**INTRODUCTION**

1. Jessica Bellemore ("Plaintiff" or "Ms. Bellemore") is a deaf individual who communicates primarily in American Sign Language ("ASL"), which is her expressed, preferred, and effective means of communication. Ms. Bellemore brings this civil action against SSS Education Inc., d/b/a Jersey College ("Defendant" or "the College") alleging that Defendant violated and continues to violate Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189, and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, by failing to provide the auxiliary aids and services necessary for Ms. Bellemore to effectively

1

communicate in an educational setting. Ms. Bellemore has always been committed to her education and has long dreamed of becoming a nurse. Ms. Bellemore alleges that Defendant discriminated against her and continues to discriminate against her on the basis of disability by delaying her enrollment in the nursing program and by refusing to provide a qualified ASL interpreter for the clinical and lab portions of her courses in the Professional Nursing RN Program.

2. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for communication through a qualified ASL interpreter. Only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even the most adept lip-readers, in an ideal one-to-one situation, have been found to understand only a small percentage of what is said. Despite this, Defendant insists on forcing Ms. Bellemore to rely on lip-reading for the clinical and lab portions of her courses, instead of ensuring effective communication with her.

3. Ms. Bellemore brings this lawsuit to compel Defendant to cease discriminatory practices, and to provide her with auxiliary aids and services to ensure effective communication, full and equal enjoyment, and meaningful access to participate in and benefit from Defendant's educational services.

4. Plaintiff seeks declaratory and injunctive relief, equitable relief, compensatory damages, and reasonable attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Title III of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq.; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

## PARTIES

5. Plaintiff Jessica Bellemore currently resides in Seminole, Florida. Ms. Bellemore is deaf, primarily communicates in American Sign Language, and is substantially limited in the major life activity of hearing within the meaning of federal anti-discrimination laws.

6. Defendant SSS Education Inc. d/b/a Jersey College, at all times hereinafter mentioned, has been licensed and doing business as a public corporation in the State of New Jersey with a principal place of business at 546 US HWY 46, Teterboro, New Jersey, 07608. Defendant owns, operates, and/or controls Jersey College Nursing School Tampa Campus, which is located at 3625 Queen Palm Drive, Tampa, Florida 33619.

7. Defendant SSS Education Inc. d/b/a Jersey College is a private college that owns, operates, and/or leases a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(J) and is subject to Title III of the ADA.

8. Defendant SSS Education Inc. d/b/a Jersey College is a recipient of federal financial assistance and is subject to Section 504 of the Rehabilitation Act.

9. Defendant's agents at all material times herein as alleged in the Complaint, were acting within the scope of their employment and authority for Defendant.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and § 1343(a) for Plaintiff's claims arising under federal law.

11. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)-(c) as Defendant SSS Educational Inc. d/b/a Jersey College resides within the jurisdiction of this District and a substantial part of the events giving rise to these claims occurred in this District.

## FACTUAL ALLEGATIONS

12. Defendant SSS Educational Inc. d/b/a Jersey College is a private college specializing in nursing education. The college was established in 2003 in New Jersey and has six locations, including the campus in Tampa, Florida.

13. The College offers a Professional Nursing Program that consists of classroom and clinical education and takes approximately 24 months to complete.

14. The College is approved to provide federal financial assistance to nursing program students who qualify and thus accepts federal financial assistance through its federal student loan program.

15. Ms. Bellemore applied to attend the Professional Nursing Program in Tampa, Florida in January 2018 and seeks an Associate of Science degree in Nursing (A.S.N.).

16. Ms. Bellemore uses ASL, and ASL interpreters to communicate in educational settings. Upon her application to the College in January of 2018, she made a formal request for auxiliary aids and services, including a qualified ASL interpreter for all classes, both academic and clinical.

17. The College accepted Ms. Bellemore as a student in May of 2018.

18. Ms. Bellemore attended orientation on May 9, 2018 and started classes on May 14, 2018. She was provided with qualified ASL interpreters for one week.

19. At the conclusion of the first week of courses, Ms. Bellemore was notified by the interpreter that the ASL interpreter services had been cancelled for the remainder of the session.

20. Ms. Bellemore immediately reached out to her contact at the school to inquire why the interpreters had been cancelled for her classes.

21. On May 18, 2018, Ms. Bellemore received a response from the school indicating that the school was continuing to review her request for auxiliary aids and services and that she would be re-enrolled in courses for the next term. Ms. Bellemore was subsequently withdrawn from her classes for the remainder of the current session against her will due to Defendant's failure to provide auxiliary aids and services.

22. On July 27, 2018, the College agreed to provide Ms. Bellemore with ASL interpreters for classroom lectures, priority seating, and copies of PowerPoint presentations used in class and notes from classmates.

23. However, Defendant refused to provide ASL interpreters for clinical or lab portions of the courses. Instead, Defendant arranged a "buddy-system" for clinicals and labs. The buddy would be a classmate rather than an interpreter.

24. In January of 2019, after Ms. Bellemore informed Defendant that the "buddy-system" would not provide her with effective communication and again requested a qualified ASL interpreter, Defendant modified the "buddy-system" replacing the classmate "buddy" with an instructor buddy.

25. The instructor buddy was not an interpreter and could not interpret what was said in the clinical and lab into ASL. Rather, the instructor buddy would attempt to condense or summarize the information relayed to the class by the clinical instructor and mouth this information to Ms. Bellemore.

26. Ms. Bellemore could not understand the instructor "buddy".

27. The instructor buddy system did not provide Ms. Bellemore with full and equal enjoyment and/or a meaningful opportunity to participate in and benefit from clinical courses and she was unable to understand the majority of information relayed during the class.

28. The instructor buddy also failed to relay to Ms. Bellemore any questions asked by the other classmates and the course instructor's responses to those questions. This meant that Ms. Bellemore was unable to learn from the experiences of other students, which is an important part of the clinical experience.

29. During one of the clinicals, the instructor buddy would also attempt to paraphrase information conveyed by videos shown in class because the captioning was inaccurate, but, because the instructor buddy did not sit adjacent to the television, as would a qualified interpreter, Ms. Bellemore was unable to watch the videos as she could not simultaneously attempt to lip-read the instructor buddy and watch the video itself.

30. Additionally, on one occasion, the instructor buddy left Ms. Bellemore's clinical before the class was over in order to teach her own class. When this happened, Ms.

Bellemore was completely deprived of all information exchanged during the clinical course.

31. The purpose of the clinical course is to provide students practical experience working with patients. During clinical, students work with patients under the instructor's supervision; however, students are allowed to work with patients independently but because Ms. Bellemore was paired exclusively with her instructor buddy, she was deprived of the opportunity to work independently.

32. Additionally, the "buddy-system" required Ms. Bellemore to attempt to lip-read for the entire duration of the clinical class, which lasted four and a half (4.5) to eight (8) hours. Ms. Bellemore could not understand the instructor "buddy" and her efforts to lip read the "buddy" for such an extended period of time left her exhausted and suffering from headaches.

33. On March 1, 2019 Ms. Bellemore internally appealed the College's provision of the "buddy-system" for clinicals and labs, once again requesting an ASL interpreter for those portions of her clinical courses.

34. In a letter dated May 29, 2019, Defendant again denied Ms. Bellemore's request for an ASL interpreter during clinical and lab coursework, claiming that the use of a sign language interpreter during clinicals and labs would create a substantial delay and cause a distraction for the students.  Defendant provided no support for these allegations.

35. Ms. Bellemore began a clinical course on August 13, 2019.  In November of 2019, her course-load will include two clinicals. Defendant continues to insist that Ms.

Bellemore utilize the instructor buddy system without the assistance of a qualified ASL interpreter.

36. Without a qualified ASL interpreter, Ms. Bellemore will not be able to meaningfully participate in and benefit from her clinical courses and will once again be denied full and equal enjoyment and meaningful access to the information in the course due to Defendant's refusal to provide sign language interpreter services.

37. Defendant knew or should have known of their obligations under the ADA and Section 504 to provide auxiliary aids and services to individuals with disabilities, including individuals who are deaf or hard of hearing.

38. As a result of the actions and/or inactions of Defendant and its agents, Ms. Bellemore has been denied full and equal enjoyment and meaningful access to clinical and lab courses that are readily and routinely provided to students who are hearing. She has received educational services that were objectively substandard and that were inferior to those provided to students who are hearing, and was subjected to discriminatory treatment because of her disability.

39. Defendant's wrongful and intentional discrimination against Ms. Bellemore on the basis of her disability is reflected by Defendant's failure to provide Ms. Bellemore with adequate auxiliary aids and services to enable her to effectively communicate during the clinical and lab portions of her courses.

40. Defendant discriminated against Ms. Bellemore with deliberate indifference to her communication needs, causing her to endure humiliation, anxiety, and emotional distress.

**COUNT ONE**
**TITLE III OF THE AMERICANS WITH DISABILITIES ACT**

41. Plaintiff hereby incorporates allegations ¶¶ 1- 40 in support of her claims.

42. Plaintiff Ms. Bellemore is substantially limited in the major life activity of hearing. Accordingly, she is an individual with a disability as defined under the ADA, 42 U.S.C. § 12102(2)(A).

43. Defendant owns, leases, and/or operates a place of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(J).

44. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

45. Federal Regulations implementing Title III of the ADA provide that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities.

46. As set forth above, Defendant has discriminated and continues to discriminate against Plaintiff on the basis of her disability, by denying her the auxiliary aids and services necessary to ensure effective communication, full and equal enjoyment to participate in and benefit from Defendant's education program in violation of Title III of the ADA, 42 U.S.C. §§ 12181-12189.

47. As set forth above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiff.

48. Plaintiff is therefore entitled to injunctive relief, as well as an award of attorney's fees and costs pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## COUNT TWO
## SECTION 504 OF THE REHABILITATION ACT

49. Plaintiff hereby incorporates allegations ¶¶ 1- 40 in support of her claims.

50. Plaintiff Ms. Bellemore is substantially limited in the major life activity of hearing, and is therefore an individual with a disability pursuant to Section 504 of the Rehabilitation Act, as amended, 29 U.S.C. § 794.

51. Plaintiff Ms. Bellemore is a qualified individual with a disability. She is enrolled in the Defendant's Professional Nursing Program.

52. During all relevant times, Defendant SSS Educational Inc. d/b/a Jersey College has been and remains a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794(b)(A)(1) by virtue of its receipt of federal financial assistance through its federal student loan program.

53. Pursuant to Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

54. Pursuant to Federal regulations implementing Section 504 of the Rehabilitation Act, programs or activities receiving Federal financial assistance "shall take steps that are necessary to ensure that no handicapped student is denied the benefits of, excluded from participation in, or otherwise subjected to discrimination because of the absence

of educational auxiliary aids for students with impaired sensory, manual, or speaking skills." 34 C.F.R. § 104.44(d)(1).

55. As set forth above, Defendant failed and continues to fail to provide auxiliary aids and services to ensure effective communication with Plaintiff, denying her meaningful access to the clinical and lab courses in its Professional Nursing Program.

56. As a result of Defendant's acts and omissions in violation of Section 504, Plaintiff has been and continues to be deprived of auxiliary aids and services necessary to participate in and benefit from clinical and lab courses.

57. As set forth above, Defendant has discriminated and continues to discriminate against Plaintiff solely on the basis of her disability, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).

58. As set forth above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiff.

59. Plaintiff is therefore entitled to injunctive relief and to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

60. Plaintiff is further entitled to an award of attorney's fees and costs pursuant to the Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court provide the following relief:

A. That the Court assume jurisdiction;

B. Issue a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices subjected and continue to subject Plaintiff to unlawful discrimination in violation of Title III of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

C. Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that denies individuals, such as Plaintiff, who are deaf or hard of hearing, full and equal enjoyment and meaningful access to participate in and benefit from Defendant's educational services or programs;

D. Issue a preliminary injunction ordering Defendant to immediately provide Plaintiff auxiliary aids and services to ensure effective communication, namely a qualified ASL interpreter for clinical courses and labs;

E. Award Plaintiff compensatory damages pursuant to Section 504 of the Rehabilitation Act;

F. Award equitable relief;

G. Award Plaintiff reasonable attorneys' fees, expenses, and costs pursuant to 29 U.S.C. § 794a(b) and 42 U.S.C. § 12205;

H. Award any and all other relief that this Court finds necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues which can be heard by a jury.

DATED this 17th day of August, 2019.

              Respectfully submitted,

              */s/ Sharon Caserta*
              Sharon Caserta, Esq.
              Florida Bar No.: 0023117
              Morgan & Morgan
              Deaf /Disability Rights
              76 South Laura Street, Suite 1100
              Jacksonville, FL 32202
              (904) 361-0078 (Voice)
              (904) 245-1121 (Videophone)
              (904) 361-4305 (Facsimile)
              scaserta@forthepeople.com

              *Trial Counsel for Plaintiff*