UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSICA BELLEMORE,

    Plaintiff,

v.                                                    CASE NO. 8:19-cv-2053-T-23JSS

SSS EDUCATION INC.,
d/b/a JERSEY COLLEGE,

    Defendant.
_____/

## **ORDER**

      Jessica Bellemore sues (Doc. 1) Jersey College under Title III of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Bellemore, a deaf nursing student, alleges that Jersey College refuses to provide Bellemore with a sign language interpreter for clinical and laboratory courses. Bellemore moves (Doc. 3) for a preliminary injunction requiring Jersey College to provide Bellemore with an interpreter. Relying on the arbitration provision in the enrollment agreement with Bellemore, Jersey College moves (Doc. 9) to compel arbitration.

      Opposing compulsory arbitration, Bellemore argues (1) that the arbitration provision is procedurally unconscionable because the parties have unequal bargaining power and because the enrollment agreement, including the arbitration

provision, is a contract of adhesion, and (2) that the arbitration provision is substantively unconscionable because the arbitration provision requires the losing party to pay the prevailing party's attorney's fee — an allegedly "untenable risk" for Bellemore. Bellemore argues that the arbitration provision's procedural and substantive deficiencies render the arbitration provision invalid and unenforceable.

## DISCUSSION

The Federal Arbitration Act codifies a federal policy favoring arbitration, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991), and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). The federal policy favoring arbitration includes the arbitration of "claims arising under federal statutes." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367–68 (11th Cir. 2005) (quoting *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1313 (11th Cir. 2002)). For instance, Section 36.506 of the ADA encourages parties to arbitrate disputes arising under the ADA.

State contract law governs whether the parties agreed to arbitrate. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–32 (2009); *Caley*, 428 F.3d at 1368. And "generally recognized contract defenses, such as duress, fraud, and unconscionability, can justify judicial refusal to enforce an arbitration agreement." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996).

Bellemore and Jersey College agree that New Jersey law applies to the enrollment agreement, including the arbitration provision.[1]  To determine the validity of an arbitration agreement, New Jersey law requires considering "(1) whether the parties agreed to arbitrate; (2) whether the dispute is within the scope of the agreement; and (3) whether Congress intended the dispute to be non-arbitrable."  *Pyo v. Wicked Fashions, Inc.*, 2010 WL 1380982, at *4 (D.N.J. Mar. 31, 2010) (citing *Sarbak v. Citigroup Global Mkts, Inc.*, 354 F. Supp. 2d 531, 536–37 (D.N.J. 2004)).

Bellemore concedes that the arbitration provision, which provides that "any dispute or claim arising out of or relating to this Agreement or, absent such agreement, my . . . attendance at Jersey College, . . . shall be submitted to and resolved by binding arbitration," covers Bellemore's demand for an interpreter.  But Bellemore argues that the arbitration provision is unconscionable, and Bellemore argues that the following clause deters her (and similarly situated people) from vindicating federal rights:

> The prevailing party in any action or proceeding to enforce any provision of this Agreement will be awarded reasonable attorney's fees and costs incurred in that action or proceeding or in efforts to negotiate the matter.

(Doc. 9, Ex. A)

---

[1] Resembling the federal policy favoring arbitration, New Jersey law "recognize[s] arbitration as a favored method for resolving disputes."  *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 773 A.2d 665, 670 (N.J. 2001) (citing *Barcon Assocs. v. Tri–County Asphalt Corp.*, 430 A.2d 214, 217 (N.J. 1981)).

## UNCONSCIONABILITY

To determine unconscionability, New Jersey law considers "(1) unfairness in the formation of the contract" (often designated as "procedural unconscionability"), and "(2) excessively disproportionate terms" (often designated as "substantive unconscionability"). *Sitogum Holdings, Inc. v. Ropes*, 352 N.J. Super. 555, 564 (Ch. Div. 2002). *Delta Funding Corp. v. Harris* summarizes the factors that determine unconscionability:

> The first factor—procedural unconscionability—can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process. The second factor—substantive unconscionability—simply suggests the exchange of obligations so one-sided as to shock the court's conscience.

189 N.J. 28, 55 (N.J. 2006) (quoting *Sitogum*, 352 N.J. Super. at 564–65). If an arbitration agreement is a contract of adhesion, New Jersey law applies a "sliding-scale" to determine unconscionability. In other words, New Jersey unconscionability analysis considers "the relative levels of both procedural and substantive unconscionability." *Terra Fin., LLC v. Acrow Corp. of Am.*, 2017 WL 499673, at *3 (D.N.J. Feb. 7, 2017) (quoting *Delta Funding Corp.*, 189 N.J. at 40).

If an arbitration agreement is unconscionable, a "court may refuse to enforce the contract, . . . enforce the remainder of the contract without the unconscionable clause, or . . . so limit the application of any unconscionable clause as to avoid any unconscionable result." N.J. Stat. Ann. § 12A:2-302.

**I. Procedural Unconscionability**

Bellemore argues that the enrollment agreement (which includes the arbitration provision) is an unconscionable contract of adhesion because Jersey College offered the terms of Bellemore's enrollment on a "take it or leave it" basis that permitted no opportunity for negotiation. (Doc. 19 at 4) However, the inability to negotiate the terms of an agreement is not — without more — procedurally unconscionable. *Muhammad v. Cnty. Bank of Rehoboth Beach, Delaware*, 189 N.J. 1, 15 (2006) ("The determination that a contract is one of adhesion, however, 'is the beginning, not the end, of the inquiry' into whether a contract, or any specific term therein, should be deemed unenforceable.") (quoting *Rudbart v. N. Jersey Dist. Water Supply Comm'n*, 127 N.J. 344, 354 (N.J. 1992)).

Instead, "a court evaluating whether a contract of adhesion is procedurally unconscionable must look 'not only to the take-it-or-leave-it nature or the standardized form of the document but also to (1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the 'adhering' party, and (4) the public interests affected by the contract.'" *Pyo v. Wicked Fashions, Inc.*, 2010 WL 1380982, at *5 (D.N.J. Mar. 31, 2010) (quoting *Muhammad*, 189 N.J. at 15)). Consideration of each factor confirms the absence of procedural unconscionability sufficient to invalidate the arbitration provision.

First, the arbitration provision applies to a dispute "arising out of or relating to [Bellemore's enrollment a]greement or, absent such agreement, [her] attendance at

Jersey College. . . ." (Doc. 9, Ex. A at 4) An enrollment agreement — a contract to pay money in exchange for a nursing education — "evidenc[es] a transaction involving commerce" under Section 2 of the Federal Arbitration Act. The parties acknowledge that the FAA applies to the enrollment agreement, and the subject matter of the arbitration provision shows no procedural unconscionability.

Second, Bellemore claims that Jersey College enjoyed a superior bargaining position because Jersey College had "the resources to hire attorneys to draft the enrollment agreement," because Bellemore lacked the ability to hire an attorney, and because Bellemore, a non-attorney, never understood the agreement. (Doc. 19 at 5) But settled New Jersey law obligates the signing party "to ensure that he underst[ands] the agreement before signing." *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221–22 (3d Cir. 2008) (upholding an arbitration agreement despite the plaintiff's allegation that he spoke only Spanish and that he could not understand a contract in English); *accord Booker v. Robert Half Int'l, Inc.*, 315 F. Supp. 2d 94, 101 (D.D.C. 2004) ("Failure to read or understand an arbitration agreement . . . will not constitute 'special circumstances' warranting relieving an employee from compliance with the terms of an arbitration agreement that she signed."). New Jersey law presumes that Bellemore read the enrollment agreement — a large portion of which is printed in conspicuous, all-capital letters in the arbitration provision — and Bellemore identifies no misleading or incomprehensible term.

Further, inequality of bargaining power — absent coercion, duress, or fraud — cannot constitute procedural unconscionability. *See Gilmer*, 500 U.S. at 33

(upholding an arbitration agreement because, despite "unequal bargaining power, . . . there [wa]s no indication . . . that [the party] was coerced or defrauded into agreeing to the arbitration clause in his registration application."); *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 367 (7th Cir. 1999) (upholding an agreement to arbitrate a Title VII claim and observing that state law does not void a contract based on unequal bargaining power or a contract of adhesion). Nothing suggests that Jersey College obtained Bellemore's consent through fraud or duress. The parties' relative bargaining power demonstrates no procedural unconscionability.

Third, no "economic compulsion" precipitated Bellemore's assent to the enrollment agreement. Bellemore presents no evidence suggesting that Jersey College subjected her to, or took unjust advantage of, economic duress caused by, or attributable to, Jersey College. Any economic duress that Bellemore experienced arose from the limitations imposed by her circumstance in life, including her inability to pay and her other obligations — all balanced against her heartfelt career aspirations. *Cont'l Bank of Pennsylvania v. Barclay Riding Acad., Inc.*, 93 N.J. 153, 175 (N.J. 1983) ("Where there is adequacy of consideration, there is generally no duress. . . . Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion.") (quoting 13 S. Williston, *Contracts*, § 1617 at 708 (3d ed. 1970)). Bellemore was free to decline enrollment without economic consequence and without obligations to, or retaliation from, Jersey College. Thus, Bellemore entered the enrollment agreement and the accompanying arbitration provision without economic compulsion.

Fourth, contrary to Bellemore's insistence that arbitration of her claims harms the public interest, both federal policy and state policy favor arbitration, and "the plain language of the . . . ADA contemplates arbitration." *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 149 (1st Cir. 1998); *Miller v. Public Storage Mgmt., Inc.*, 121 F.3d 215, 218 (5th Cir. 1997) (holding an ADA claim subject to arbitration and observing that the explicit language of the ADA "persuasively demonstrates Congress did not intend to exclude the ADA from the scope of the FAA").

Nothing in Bellemore's enrollment agreement suggests procedural unconscionability.

## II. Substantive Unconscionability

Bellemore argues that the "cost-shifting" clause, which entitles the prevailing party in arbitration to a reasonable attorney's fee, subjects Bellemore to an untenable risk of expense and, consequently, effectively prevents Bellemore from pursuing her rights under the ADA.

*Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000), holds that a party resisting arbitration "bears the burden of showing the likelihood of incurring [prohibitive] costs." However, demonstrating the possibility — as opposed to demonstrating the likelihood — of a prohibitive financial burden remains "too speculative" to invalidate an arbitration agreement. *Id.* at 91.

Applying *Green Tree* to an arbitration agreement's "loser pays" provision, *Musnick v. King Motor Co.*, 325 F.3d 1255 (11th Cir. 2003), holds that a party resisting arbitration must demonstrate a "likelihood of prohibitive costs" by "offer[ing]

evidence of the amount of fees he is likely to incur, as well as of his inability to pay those fees." *Musnick*, 325 F.3d at 1259–60. Neither "the mere existence" of a "loser pays provision" nor an unsubstantiated assertion about an inability to pay satisfies the claimant's burden to demonstrate the likelihood of prohibitive cost. *Musnick*, 325 F.3d at 1259 (quoting *Blair v. Scott Specialty Gases*, 283 F.3d 595, 610 (3d Cir. 2002)). "Absent a record establishing that the plaintiff 'likely will incur prohibitive costs,' an agreement to arbitrate must be enforced."[2] *Musnick*, 325 F.3d at 1258 (quoting *Bess v. Check Express*, 294 F.3d 1298, 1304 (11th Cir. 2002)).

In *Musnick*, because the plaintiff failed to submit evidence demonstrating the likelihood of prohibitive cost, the Eleventh Circuit enforced the arbitration agreement despite a "loser pays" provision and declined to remand to the district court for "further fact-finding."[3] *Musnick*, 325 F.3d at 1260. In explaining the refusal to remand to the district court for further fact-finding, the Eleventh Circuit reasoned:

> Whether Musnick will, in fact, incur attorneys' fees in this matter depends entirely on whether he prevails in arbitration. If he does, he will incur no fees at all under the agreement's "loser pays" provision. In this event, obviously, he will not have been deprived of any statutory right or remedy by the mandatory arbitration.

---

[2] The requirement of demonstrating a likelihood of prohibitive arbitral cost applies with equal force to a discrimination claim. *See Bess v. Check Express*, 294 F.3d 1298, 1304 (11th Cir. 2002) (holding that to successfully avoid arbitration a Title VII plaintiff must show a likelihood of bearing prohibitive costs).

[3] Also, *Musnick*, 325 F.3d at 1260, cites several other courts that have compelled arbitration despite a similar cost-shifting provision. *See, e.g.*, *Goodman v. ESPE America, Inc.*, 84 Fair Empl. Prac. Cas. 1629 (E.D. Pa. 2001); *DeGroff v. MascoTech Forming Techs. Fort Wayne, Inc.*, 179 F. Supp. 2d 896, 910 (N.D. Ind. 2001); *Dowling v. Anthony Crane Int'l*, 2001 WL 378838 (D.V.I. Mar. 20, 2001); *Rajjak v. McFrank and Williams*, 86 Fair Empl. Prac. Cas. 737, 4 (S.D.N.Y. 2001); *Witz v. Apps*, 2000 WL 1720434 (N.D. Ill. Nov. 14, 2000).

> Should he not prevail, he may incur liability for costs and fees. If
> he believes that liability is excessive or that it deprives him of his
> statutory remedy, he may seek judicial review . . . and challenge
> this award in federal court. Once the arbitrator has reached the
> issues of costs and fees, those items will no longer be speculative,
> and any issue presented thereby will be ripe for decision.

*Musnick*, 325 F.3d at 1262.

Bellemore fails to demonstrate a likelihood of incurring prohibitive cost. In Bellemore's response to Jersey College's motion to compel arbitration, Bellemore states that she "is a single mother who depends on government assistance while she pursues her studies," that she "has taken out considerable student debt," that she "cannot afford the cost of sign language interpreters for arbitration," and that she "cannot [] afford the risk of having to pay all of Jersey College's legal fees." (Doc. 19)  But the supplementary "evidence" attached to Bellemore's response consists of (1) Bellemore's attestation reiterating the unsubstantiated assertions in the response, (2) the AAA's rules on consumer arbitration, and (3) an excerpt from the *Guide to Judiciary Policy*, published by the Administrative Office of the U.S. Courts, which entitles Bellemore to free interpretive services in federal court.  This supplementary documentation fails to substantiate a likelihood of prohibitive cost.

*Green Tree* obligates Bellemore to "offer evidence of the amount of fees [s]he is likely to incur, as well as of [her] inability to pay those fees." *Musnick*, 325 F.3d at 1260.  However, Bellemore provides no reliable or objective evidence from which to conclude that arbitration will subject Bellemore to prohibitive cost.  Bellemore offers no financial documentation substantiating her income, her net worth, or her inability to pay; no estimate of the cost of arbitration or the cost of an interpreter; and no

evidence about the unavailability of a fee waiver or other accommodation from the AAA — Bellemore offers only conclusory assertions of her inability to pay.

Without evidentiary support, "[Bellemore]'s speculation about prohibitive costs is just that — speculation; this is not enough to invalidate an otherwise enforceable arbitration provision." *Musnick*, 325 F.3d at 1260. Accordingly, rather than allowing discovery of, or relying on speculative assertions about, the financial burden of arbitration, *Musnick* commends compelling the parties to arbitrate in accord with the agreement and allowing Bellemore, as suggested in *Musnick*, to attack in district court the arbitrator's award of an excessive fee — if any. In any event, "[a]rbitration is the correct initial forum for [Bellemore] to air [her] objection" to the "loser pays" clause.[4] *Thompson*, 300 F.3d at 92. Therefore, the "loser pays" clause and the "possibility" of high arbitration costs fail to relieve Bellemore of her contractual obligation to arbitrate.[5]

---

[4] The same principle applies to Bellemore's statutory remedy claims. *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1086 (8th Cir. 2001) ("Whether federal public policy prohibits an individual from waiving certain statutory remedies is an issue that may be raised when challenging an arbitrator's award"); *Thompson*, 300 F.3d at 92 ("If an arbitrator does award attorney's fees against [a plaintiff] the district court would then be in a position to hear the[] argument that the challenged provision on attorney's fees is unenforceable because it deprives the [plaintiff] of a statutory right.").

[5] This order studiedly remains silent on whether Bellemore's action to enforce provisions of the ADA and Rehabilitation Act — an action pleaded without reliance on, and independent of, the enrollment agreement — constitutes an "action or proceeding to enforce any provision of [the enrollment a]greement," a requirement to trigger the "loser pays" clause. Also, this order presents no occasion to ponder the knotty problem of an agreement that includes a provision, the application of which depends on the absence of the agreement containing the provision — a bizarre contingency in the first sentence of the arbitration provision.

**III. Preliminary Injunction**

Bellemore argues that compelling arbitration and denying the request for a preliminary injunction would render arbitration a "hollow formality" and that, even if an order compels arbitration, Bellemore is entitled to a preliminary injunction. Bellemore also argues that "an arbitral award of money damages could not return the parties to the status quo." (Doc. 19 at 11).

Bellemore is correct that a court can both issue a preliminary injunction and compel arbitration. *Merrill Lynch, Pierce, Fenner & Smith v. Salvano*, 999 F.2d 211, 214 (7th Cir. 1993) ("[T]he weight of federal appellate authority recognizes some equitable power on the part of the district court to issue preliminary injunctive relief in disputes that are ultimately to be resolved by an arbitration panel."). However, the sound exercise of discretion commends compelling arbitration if a party freely agrees to arbitrate, if both federal and state policy promote arbitration, and if an arbitrator retains the authority to provide preliminary injunctive relief. *See* 2 *Domke on Com. Arb.* § 35:4 ("Under both the Federal Arbitration Act and the Uniform Arbitration Act or the Revised Uniform Arbitration Act, arbitrators have, consistent with their wide authority to grant remedies, authority to grant provisional remedies and interim relief in order to maintain the status quo."). The arbitrator can decide to issue a mandatory injunction[6] if Bellemore satisfies the necessary criteria, and

---

[6] Even though Bellemore requests a preliminary injunction to preserve the "*status quo ante*," the "*status quo ante*" for Bellemore leaves her without an interpreter for her clinical coursework. Therefore, Bellemore's motion is construed as a request for an injunction mandating that Jersey College change the "*status quo ante*."

- 12 -

nothing about the arbitral forum suggests a deficiency in Bellemore's ability to obtain equitable relief or to vindicate her federal rights.

## CONCLUSION

Accordingly, Jersey College's motion (Doc. 9) to compel arbitration and to stay the case is **GRANTED**, the action is **STAYED**, and the motions (Docs. 32, 34) to supplement the record are **DENIED AS MOOT**. Bellemore's motion (Doc. 3) for a preliminary injunction is **DENIED WITHOUT PREJUDICE** to moving the arbitrator for injunctive relief. No later than ten days after announcement of the arbitral decision, the parties must move either (1) to affirm, vacate, or modify the award or (2) to dismiss the action. The clerk is directed to **ADMINISTRATIVELY CLOSE** the case.

ORDERED in Tampa, Florida, on November 26, 2019.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE